## CHARLES S. BRANTINGHAM et al. v. GEORGE H. BEASLEY et al.

Middle Section.    January 15, 1926.

Certiorari denied by Supreme Court, May 22, 1926.

1. Mechanics' liens.    Principal contractor is a necessary party to suit to enforce a mechanic's lien.
   The principal contractor is the debtor sued and has a right to controvert the indebtedness and is therefore a necessary party to the suit.

2. Mechanics' liens.    Registration of statement of account not necessary as against owner.
   The registration of the statement of account provided for in Shannon's Code, section 3540, is not necessary as against the owner, for the perfection or preservation of the lien of a subcontractor but is only necessary as against third persons.

3. Mechanics' liens.    Filing of the suit meets the statutory requirement for notice.
   The requirement of the act that notice be given within thirty days after the completion of the building or the contract of the furnisher shall expire is complied with by institution of suit and service of process within that time.

4. Mechanics' liens.    Purchaser takes clear title if notice of lien not on file.
   A purchaser of property on which a mechanic's lien is claimed takes free from the lien in the absence of registration of statement or filing of attachment suit.

5. **Mechanics' lien. Filing of attachment suit has same effect as registration of statement.**

In an action by a pendente lite purchaser to restrain the enforcement of a mechanic's lien where no statement had been registered but an attachment suit on the account had been filed prior to the sale, held the filing of the attachment suit served notice and the filing of the statement was not necessary.

6. **Attachment. The filing of an attachment suit operates as a lis pendens.**

The pendency of the attachment suit in the circuit court operates as a lis pendens, during which all transfers are void as to the liénor. Shannon's Code, section 5267.

7. **Mechanics' liens. Subcontractor not entitled to a personal judgment against owner.**

In a suit on a mechanic's lien for want of privity a subcontractor is not entitled to personal judgment against the owner and must enforce his mechanic's lien by attachment.

8. **Mechanics' lien. If judgment creditor resorts to fieri facias, he waives lien of attachment.**

It is well settled that when the judgment is rendered the plaintiff has the election to resort to the enforcement of his recovery under the attachment by venditioni exponas, or to rely simply upon a fieri facias; that if he rely upon his fieri facias, he thereby waives the lien of his attachment.

9. **Mechanics' lien. Remedial features of statute are liberally construed.**

It has been repeatedly held that the remedial features of the mechanics and furnishers lien law—that is, the remedy provided for the enforcement of these liens—will be liberally construed by the courts and when the party claiming the lien has shown, in the way provided by law, that it exists in his favor, then the courts will be liberal in enforcing the remedies provided for him.

Appeal from Chancery Court, Davidson County; Hon. Jas. B. Newman, Chancellor.

Reversed and dismissed.

J. T. Fain and Bell & Hibbitts, of Nashville, for appellants.

Bass, Berry & Sims, of Nashville, for appellees.

DeWITT, J. In this cause the defendants have appealed from the decree of the Chancellor sustaining a bill to enjoin them from procuring a sale of certain real property pursuant to a judgment rendered by the circuit court of Davidson county on February 16, 1920, sustaining an attachment to enforce a lien for material furnished and used in the construction of a building on said property. The assignments of error raise a number of questions which will be treated in the course of this opinion.

On June 11, 1907, Beasley & Sons instituted a suit, by attachment, before a Justice of the Peace against the American Confectionery Company, then the owner of the property, it being properly described in the attachment. The attachment was issued and returned showing the levy upon the property. On July 24, 1907, the attachment was sustained by the Justice of the Peace for the satisfaction of the claim of $187.66 and costs. Appeal was duly taken to the circuit

court where the papers were duly filed. The suit had been instituted within the period of limitation, but no statement of the amount due for the work done, or materials furnished was ever filed with the County Register, as provided by section 1, chapter 103, of the Acts of 1889, being section 3541 of Shannon's Code. The materials were furnished by contract with one Yeaman, as principal contractor, but he was not made a party to the attachment suit. Upon proper demand the case in the circuit court was placed upon the jury docket and never proceeded to final judgment until February 16, 1920. On that day a jury rendered a verdict in favor of Beasley & Sons, in the sum of $322.87, which included interest, and for costs of the cause. The attachment was sustained. Judgment was rendered against the American Confectionery Company, principal, and R. D. Harris, surety on the appeal bond. On February 18, 1920, a supplemental order was entered reciting, among other things, that the plaintiffs were entitled to enforce a mechanic's and furnisher's lien, which they, as subcontractors, had and were entitled to enforce against said house and lot, they having furnished windows, putty, etc., for the erection of said house for the American Confectionery Company in the months of March and April, 1907. It was ordered that unless said judgment and costs should be paid within thirty days, the clerk of the circuit court should, upon due advertisement, sell said property in enforcement of said attachment and for the satisfaction of said judgment.

On August 23, 1920, the bill in this cause was filed by purchasers pendente lite to enjoin the plaintiffs in said action from proceeding to enforce said judgment and order of the sale.

One of the principal grounds for relief relied upon is that lis pendens of the attachment suit in the circuit court was lost by delay and laches. The relief is asked in the bill by subsequent purchasers of the property who had no actual knowledge of the pendency of the action or the claim of lien. On December 18, 1911, the American Confectionery Company conveyed this property to the Geiser Manufacturing Company. On May 22, 1913, the Geiser Manufacturing Company conveyed it to the appellees in this cause. None of these grantees thus took the property with any actual knowledge of the pendency of the attachment proceeding or of the claim of lien on the property.

In March, 1908, the suit in the circuit court was tried but the jury failed to agree upon the amount of the debt and a mistrial was entered. Thereafter the cause was continued from term to term until it was finally tried. In June, 1908, in May, 1909, and in October, 1909 it was continued for absence of counsel for the defendant. In February, 1910, it was continued for absence of counsel. In May, 1910, the papers in the case were taken out by counsel for defendant and were not returned until after the property was purchased by the

appellees. It is shown by the testimony of J. T. Fain, who was first bookkeeper for Beasley & Sons, then secretary and treasurer of Beasley & Sons Company, and now counsel for appellants in this cause, that he was constantly associated with Mr. Hamilton Parks in the prosecution of said suit; that he was present in the circuit court ready for trial every time the cause was set for trial, but owing to the condition of the docket and other causes beyond their control they were unable to get a trial before February 16, 1920. In May, 1910, the cause was transferred to the docket of the first circuit court. because of the incompetency of the judge of the court in which the cause was pending. Thereafter the appellants always appeared with their witnesses ready for trial when the case was called and Mr. Parks was present except on one occasion when he was ill. Mr. Fain testifies that at each term some case having priority in order was called and tried and, according to the custom, this case was continued until the next term of court. He further testifies that at a number of terms of court counsel for defendant procured a continuance on account of being engaged in extensive litigation involving the affairs of the city of Nashville; that in June, 1915, Mr. Parks protested against further continuance but it was continued upon affidavit of defendants' counsel that owing to his physical condition he was unable to try the case; that at no time did Mr. Parks agree to a continuance for the accommodation of counsel for defendant. He testifies that Mr. Parks was always very careful to notify him when the case was about to be called and they went together to the court room. He does not remember the reason for the continuance in every instance but he says that the cause was continued only once on application of the plaintiffs' attorney, and then because of his illness. He further says that the case was never reached after 1910, so that it could be tried, until February, 1920, and this was the first time that the case could possibly be tried; in other words, the case was never called in the circuit court on an open day during the entire period from 1910 to 1920. When asked if the defendant and its counsel had been ready for trial at any time when the case was called between 1910 and 1920, would it have had to be continued on account of other engagements of the court, he said that he could not answer for the other engagements of the court, but that his general recollection was that the case was usually crowded out on account of the condition of the docket.

There is no countervailing testimony, but the appellants insist that the court must conclude that surely by the exercise of due diligence by the plaintiffs and their counsel a trial could have been obtained within a reasonable time.

The relief sought in the bill is an injunction restraining the defendants from advertising, selling or in any way interfering with the

property; and a decree declaring null and void the lien so fixed upon said property by the circuit court, and removing it as a cloud upon the title of the complainants. This relief was granted by the Chancellor. Of course, no attack was made upon the judgment against the American Confectionery Company and the surety upon its appeal bond. This is therefore an invocation of the power of a court of equity to act upon the person of an adverse party by preventing him from making an inequitable use of his judgment. The question in such a case is, ought the right in good conscience to be retained? The judgment complained of as it affects these purchasers is not void, because no fraud is charged or shown, and the court had jurisdiction over the parties and the subject-matter. As grounds for relief two alleged defects in the proceeding are insisted upon; First, that the principal contractor was not made a party to the suit. Second, that no statement of the claim of lien was registered in the office of the County Register.

It is true that the principal contractor is a necessary party to a suit to enforce a mechanic's lien. Warner v. Yates, 118 Tenn., 554. He is the debtor sued and has the right to controvert the indebtedness claimed. But in this case the principal contractor gave to Beasley & Sons an order upon the owner for the amount claimed and it was accepted by the owner. The indebtedness was, therefore, no longer uncertain. The account was not unliquidated nor unsettled. It does not appear that any objection was made on this ground. The right to make the question was therefore, waived. Luttrell v. Railroad, 119 Tenn., 504. The registration of the statement of account provided for in Shannon's Code, section 3540, is not necessary, as against the owner, for the perfection or preservation of the lien of a subcontractor but is only necessary as against third persons. Reeves v. Henderson, 90 Tenn., 521; Green v. Williams, 92 Tenn., 227. The requirement of the act that notice be given within thirty days after the completion of the building or the contract of the furnisher shall expire is complied with by institution of suit and service of process within that time, as was done in this case. Brown v. Crump, 2 Swan, 534; Bassett v. Bertorelli, 92 Tenn., 556. Under the Act (before it was amended by chapter 144, Acts of 1925), after the notice was given the lien continued for ninety days from the date thereof. Within that time the lien existed against the owner. A purchaser having no knowledge of the claim of lien was not affected in the absence of registration of the statement, unless suit by attachment describing the property were pending in a court of record having jurisdiction, having been instituted prior to the purchase. In such a situation whether the lienor must rely on the constructive notice without the registered statement is not decided in any of the re-

ported cases in Tennessee. We are of the opinion that upon sound reason this was a sufficient notice. There can be no doubt that if the statutory statement had been registered the appellees herein could not maintain their bill. But the pendency of the attachment suit in the circuit court operates as a lis pendens, during which all transfers are void as to the lienor. Shannon's Code, section 5267. The object of the registration is but to preserve the lien as to alienees of the property by imparting notice to them and avoiding the ineffectiveness of a secret lien. When this notice is otherwise imparted the purpose of the statute has been satisfied. It is upon the same principle that the registration is not necessary as between the lienor and the original owner—notice is given in a formal and effective manner. It is also insisted that this was a simple suit on account against the American Confectionery Company, and that the attempt to enforce a lien was an afterthought. It is true, according to the uncontradicted testimony, that the principal contractor gave to Beasley & Sons an order on the American Confectionery Company for the amount due them by contract with him, and it was accepted; that judgment was sought and obtained against that Company, as well as attachment of the property. It is true that for want of privity a subcontractor is not entitled to personal judgment against the owner and must enforce his mechanic's lien by attachment. Taylor v. Lumber Co., 107 Tenn., 41; Lumber Co. v. Loeb, 110 Tenn., 260. But here was privity between the subcontractor and the owner by virtue of the accepted order, which constituted a promise by the owner to pay. This transformed the relation of the parties into that which would be sustained between a principal contractor and the owner. In such case, under section 5306 of Shannon's Code, the lien may be enforced by attachment at law or in equity, or by judgment and execution at law, to be levied on the property on which the lien is. In Lumber Co. v. Loeb, supra, it was held that the remedy "by judgment and execution at law, to be levied on the property on which the lien is," was a remedy additional to that provided by attachment. It is clear that the appellants never abandoned their proceeding by attachment but insisted upon it, and that the final order of the circuit court sustained it. It is well settled that when the judgment is rendered the plaintiff has the election to resort to the enforcement of his recovery under the attachment by venditioni exponas, or to rely simply upon a fieri facias; that if he rely upon his fieri facias, he thereby waives the lien of his attachment. Hurst v. Liford, 11 Heisk., 624; Snell v. Allen, 1 Swan, 207; Seawell v. Williams, 2 Overt., 273. But in this case nothing whatever was done toward the enforcement of the judgment. As the property was sold pendente lite, the presumption would be that the plaintiffs (appellants here) intended to have the property sold pursuant to the order sustaining

the attachment and providing for sale after thirty days. We cannot see such inconsistency between taking a personal judgment against the owner and levying an attachment on the land as would cause the latter to be a waiver of the former. It is only when there is a taking of collateral security for the debt that ever a presumption arises that the lienor thereby intends to waive his lien on the property. Electric Light Co. v. Gas Co., 99 Tenn., 370. There is here no acceptance of collateral security. A mechanic's lienor, like a vendor selling land on time, is presumed to intend to rely on his lien on the premises. Electric Co. v. Gas Co., supra. There is nothing in this record that shows an intention to waive the lien. It has been repeatedly held that the remedial features of the mechanic's and furnisher's lien law—that is, the remedy provided for the enforcement of these liens—will be liberally construed by the courts, and when the party claiming the lien has shown, in the way provided by law, that it exists in his favor, then the courts will be liberal in enforcing the remedies provided for him. Christie v. Williamson, 4 Tenn., C. C. A., 171, and cases there cited.

In this cause a court of equity is asked by a successor in estate to the defendant at law to interfere with the judgment, or restrain the enforcement of it, because of equitable features or grounds of relief. It is insisted that any lis pendens of the attachment was lost by laches, or want of diligence in prosecuting the suit to a judgment; in other words, that there was no lis pendens of the attachment suit on May 22, 1913, when the complainants purchased the property. It is insisted that complainants have not had their day in court and they should be relieved of the attempted lien on their property.

In Black on Judgments, section 253, it is shown by good reasoning and upon good authority that a bill in equity to restrain the execution of a judgment is in reality a collateral attack upon the judgment, and therefore, cannot be based upon mere errors or irregularities; because the action of the court of equity is only by laying a restraining hand upon the person, not the judgment. What chancery does, in these circumstances, is to put its prohibition upon the person who has obtained the judgment to prevent him from making use of it, which as it appears would be inequitable and against conscience. Equity will not review judgments at law, unless for causes giving rise to peculiar equitable jurisdiction, on grounds of which one could not avail himself at law, or of which he was prevented from availing himself by fraud or accident or the act of the opposite party, unmixed with negligence on his part. Kearney v. Smith, 3 Yerg., 127; Rice v. Bank, 7 Humph., 39.

On collateral attack upon a judgment or decree of a court of general jurisdiction by parties or privies thereto, the rule is that such judgment or decree cannot be questioned except for want of author-

ity over the matter adjudicated upon; and this want of authority must be found in the record itself. Puckett v. Wynne, 132 Tenn., 523; Wilkin v. McCorkle, 112 Tenn., 707, 80 S. W., 834.

One who by purchase or otherwise has succeeded to an estate is to that extent in privity with his predecessors in interest and is therefore, subject to the disadvantages which by operation of final adjudication had attached' to the property in the hands of its former owners. Freeman on Judgments (5 Ed.), sec. 439.

The question, then, finally arises, were the appellees affected by a. lis pendens at the date of their purchase? If they were, they are bound by the judgment finally rendered, sustaining the lien. Shelton v. Johnson, 4 Sneed, 672. This question involves the right to relief in equity and good conscience.

The levy of the attachment itself and the pendency of the suit in the circuit court operated as a lis pendens. Shannon's Code, section 5267; Sharp v. Slater, 7 Cold., 389; Allen v. Gilliland, 6 Lea, 535; Boyd v. Roberts, 10 Heisk., 477; Am. Exchange Bank v. Andrews, 12 Heisk., 306.

In 17 R. C. L., p. 1013, it is said that the doctrine of lis pendens, although well settled, is now in all the reported cases admitted to be harsh, and justifiable only on the ground that individual rights must sometimes be made to yield to rules established for general convenience; that such doctrine is not a favorite ever with the courts; it will not be extended without strict necessity, and will be strictly construed. But this rule of strictissimi juris applies particularly to the creation of the lis pendens. As between the parties interested, the suit may be pending so long as the rights of others are not affected thereby, but where the rights of purchasers intervene, and a real question of the application of the doctrine of lis pendens is presented, the generally accepted rule is that if the pendente lite purchasers are to be affected, the suit must have been prosecuted in good faith, with all reasonable diligence, and without unnecessary delay. 17 R. C. L., p. 1037; Mann v. Roberts, 11 Lea, 57; Robinson v. Bierce, 102 Tenn., 428; Williamson v. Williams, 11 Lea, 355.

In Williamson v. Williams, the court quoted with aproval from 12 Am. & Eng. Ency of Law, 891, as follows:

"The true grounds upon which the courts should decide whether there has or not been such a prosecution of any given suit as to preserve or destroy the continuity of the lis pendens, is by the application of the established principles of estoppel. The law imposes the duty upon the plaintiff or complainant to prosecute with proper diligence. The public have a right to expect it. If there is a failure to prosecute, the courts have a right to treat the negligence as intentional and misleading to the public. If the degree of this negligence has been so great as to induce

the public to believe that the prosecution of the suit has been abandoned, they should then hold the plaintiff or complainant estopped from claiming to the contrary.''

In Mann v. Roberts, supra, it was held that the lien will not perhaps be impaired by ordinary negligence but will only be lost by unusual and unreasonable delay. The delay may be explained, but if not explained, the question becomes one of culpable laches to the injury of an innocent third person; and what constitutes unreasonable want of diligence or undue delay must be determined by the particular circumstances of each case.

In Freeman on Judgments (5 Ed.), sec. 539, it is said that the rule in reference to continuous prosecution simply requires that there shall be no such neglect in the prosecution as cannot be explained and appears to be inexcusable; that mere lapse of time does not indicate such negligence, and as a general rule there will be no estoppel against the right to enforce the lis pendens unless the plaintiff, or complainant, in the suit has been so negligent in its prosecution as to induce the belief that such prosecution has been abandoned.

The purchaser has only the right to complain of delay which takes place prior to his purchase. 38 C. J. 39; Tippenhauer v. Newport Roller Mill Co. (Ky.), 105 S. W. 440.

Consequently, the period of delay to be considered in this case ended on May 22, 1913, the date of the purchase; in other words, a period of nearly six years.

In Mann v. Roberts, supra, there was an unexplained delay of over three years before the purchase pendente lite. The case of Erhman v. Kendrick, 1 Metc. (Ky.) 146, cited in Mann v. Roberts, was a case of delay totally unexplained. In Robinson v. Bierce, supra, there was an unexplained delay of eleven years of an action to enforce a lien for taxes. In Hammock v. Qualls, 139 Tenn., 388, there was an unexplained delay of over eight years in obtaining a sheriff's deed after a sale under order of condemnation. In none of the Tennessee cases reported, in which the lis pendens was held to have been thus lost, do we find that there was any attempt to explain the delay. In Waller v. McNabb, 4 Sneed, 422, it was held that the lien of a mechanic for materials furnished or work done upon a building is a proceeding in rem, and when it is once attached, by no conveyance or proceeding whatever can it be defeated. The lien cannot be lightly held to have been abandoned.

The appellants have shown that they made reasonable effort to obtain a trial of the cause; that at three terms after the early mistrial, the case was continued for absence of counsel for the defendant, and probably a fourth time. The withdrawal of the papers in the case in May, 1910, by counsel for defendant in that case could not in itself be considered to the prejudice of the appellants. The loss of

the papers was not the result of any negligence or carelessness of the appellants. While we have not before us a full transcript of the record in the circuit court, it is to be presumed that the case was docketed showing the names of the parties, and a purchaser pendente lite must be deemed to be bound by what an investigation would have revealed. The papers were merely in the hands of counsel and surely they could have been found by reasonable diligence. Furthermore, there were on the minutes of the circuit court entries made on March 25, 1908, and April 6, 1908, which plainly showed that there was a lien claimed as against the American Confectionery Company, an attachment to enforce the lien, dismissal of the attachment and then upon motion a reinstatement of it. This constituted notice to the purchaser independent of the warrant and the attachment papers.

In Hudson v. Herman, 81 Kans. 627, 107 Pac. Rep., 35, it was held that a lis pendens purchaser has no special standing in equity to complain of laches upon the part of plaintiff.

We think that this is a sound rule, for the purchaser is claiming title under deed from the party to whom the lis pendens clearly applied. We think that this case is clearly differentiated from the cases relied upon by the appellees in that the delay is explained by the constant efforts of appellants to obtain a trial and the evident course of defendant and its counsel, from term to term, in avoiding a trial. It may seem a hardship for the appellees to have to bear this burden under the circumstances, but equity will not relieve against the operation of a judgment at law simply on account of its hardship. Black on Judgments, sec. 365; Hamilton v. Adams, 15 Ala., 596, 50 Am. Dec., 150.

We are, therefore, of the opinion that the Chancellor was in error in sustaining the bill. The decree of the Chancellor is reversed and the bill is dismissed. The costs of the appeal, as well as the costs in the court below, will be adjudged against the appellees.

Faw, P. J., and Crownover, J., concur.